Receipt number AUSFCC-6175000

## IN THE UNITED STATES COURT OF FEDERAL CLAIMS

ALVER VALLES-PRIETO,

          *Plaintiff,*

v.

UNITED STATES OF AMERICA,

          *Defendant.*

Case No. __20-589__ C

## COMPLAINT

### INTRODUCTION

1. In this action, Plaintiff Alver Valles-Prieto, who served in the United States Air Force with distinction for nearly ten years, challenges the Air Force's failure to award him a medical retirement.

2. Mr. Valles-Prieto enlisted in the Air Force in 2005. He was diagnosed with Depressive Disorder in February 2013, shortly before the start of his eighth year of service. In spite of this diagnosis and several physical ailments that were causing him significant pain, Mr. Valles-Prieto wanted to re-enlist on active duty or, failing that, join the Air Force Reserve. But because of his depression, he was prohibited from doing either.

3. Mr. Valles-Prieto was responsible for repairing and inspecting F-15 avionics systems, a position that required a Secret security clearance. When that clearance came up for renewal, the Air Force determined that his mental health diagnosis rendered him ineligible. Without a clearance, Mr. Valles-Prieto could no longer perform his job, which led to the denial of his re-enlistment on active duty and his administrative separation from the Air Force in January 2015. His mental health diagnosis also rendered him ineligible to enlist in the Air Force Reserve.

4. Mr. Valles-Prieto was honorably discharged from the Air Force, but he should have received a Medical Disability Retirement. Because his mental health condition prevented his continued military service, he should have been referred to the Integrated Disability Evaluation System (IDES) and evaluated by the Medical Evaluation Board (MEB) and Physical Evaluation Board (PEB). Had that occurred, he would have been awarded a Medical Disability Retirement and all the ancillary benefits it carries.

5. In June 2018, Mr. Valles-Prieto asked the Air Force Board for Correction of Medical Records (BCMR or the "Board") to correct his records and award him the medical retirement status that he should have received in 2015. In that application, he explained that the Air Force had violated his rights by not referring him to the IDES and that, if it had done so, he would have been awarded medical retirement.

6. Both the Medical Advisor and Mental Health Advisor who reviewed Mr. Valles-Prieto's case file acknowledged that his mental health diagnosis interfered with his ability to obtain a security clearance, and that his inability to obtain a clearance made him ineligible to re-enlist in the Air Force on active duty or to enlist in the Air Force Reserve. Yet the Mental Health Advisor concluded—without citing any supporting evidence—that Mr. Valles-Prieto was still "fit" for continued military service and that even if Mr. Valles Prieto were unfit at the time of his discharge, he had a mental health disorder *prior* to joining the Air Force and was therefore ineligible to receive medical retirement. The Mental Health Advisor also concluded—without citing any supporting evidence, regulations, or laws—that Mr. Valles-Prieto had refused certain types of treatment for his Depressive Disorder, and so did not adequately take responsibility for his own care, and therefore, did not deserve medical retirement.

7. Mr. Valles-Prieto filed a letter protesting these conclusions and recommendations. He explained, among other things, that because his depression prevented him from obtaining a security clearance, it rendered him "unfit" for military service, and there was no evidence he had a preexisting mental health disorder before he joined the Air Force. Mr. Valles-Prieto also explained that because noncompliance with treatment can be a symptom of a mental health condition, even if he had refused certain treatment for his condition, it should not be held against him. But the Board denied his application for relief, concluding in three short sentences that it agreed with the recommendations from the Medical and Mental Health Advisors. The Board did not cite any evidence from Mr. Valles-Prieto's file or any laws or regulations, or address any of Mr. Valles-Prieto's objections. That decision—which ignores the undisputed facts that show Mr. Valles-Prieto was entitled to IDES referral and medical retirement and fails to adequately explain the BCMR's reasoning—was arbitrary, capricious, contrary to law, and unsupported by substantial evidence.

8. Plaintiff therefore brings this action against Defendant, the United States of America, to obtain redress for that error.

## NATURE OF THE ACTION

9. This action is brought under 10 U.S.C. § 1201 for pay and benefits of medical retirement, due to Depressive Disorder, as well as the correction of the record regarding Mr. Valles-Prieto's separation from the U.S. Air Force.

10. At the time of Mr. Valles-Prieto's separation, Department of Defense Instruction (DoDI) 1332.18 (Aug. 5, 2014), required the Air Force to refer Mr. Valles-Prieto to the Integrated Disability Evaluation System (IDES) process to determine whether he was entitled to a medical retirement. The Air Force, however, failed to provide the required referral. Instead, it

discharged Mr. Valles-Prieto without consideration of a medical retirement on January 31, 2015, and barred his re-enlistment. In so doing, it overlooked Mr. Valles-Prieto's significant, duty-limiting mental health disorder.

11. Mr. Valles-Prieto asked the Air Force Board for the Correction of Military Records (BCMR or the "Board") to correct this error, but the Board improperly denied him the benefits to which he was entitled. The BCMR acknowledged that Mr. Valles-Prieto's mental health diagnosis made it impossible to maintain a security clearance. His inability to maintain a clearance was incompatible with his job requirements and accordingly prohibited him from re-enlisting and from joining the Air Force Reserve. Nevertheless, the BCMR justified its refusal to provide medical retirement status by relying on the Mental Health Advisor's determination that Mr. Valles-Prieto had a mental health disorder *prior* to joining the Air Force—a determination directly contradicted by the record. The Board also relied on the Mental Health Advisor's conclusion that Mr. Valles-Prieto had refused certain types of treatment for his Depressive Disorder, and so he had not adequately taken responsibility for his own care and therefore did not deserve medical retirement—a conclusion devoid of any citation to supporting evidence, regulations, or laws. The BCMR also failed to respond to Mr. Valles-Prieto's arguments disputing those unsupported determinations.

12. Each of these failures rendered the Board's decision arbitrary and capricious, unsupported by substantial evidence, and contrary to law.

## JURISDICTION AND VENUE

13. This Court has jurisdiction over this action pursuant to the Tucker Act, 28 U.S.C. § 1491(a)(1) and (2).

14. The statutory basis for invoking jurisdiction is 10 U.S.C. § 1201, which requires the payment of disability retirement compensation once a disability is found qualifying and, therefore, constitutes a money-mandating provision.

15. Mr. Valles-Prieto has exhausted his administrative remedies by seeking relief from the BCMR before commencing this action.

16. In accordance with 28 U.S.C. § 2501, this action is brought within six years of the BCMR's denial of Mr. Valles-Prieto's request for a correction of his record.

## PARTIES

17. Staff Sergeant Alver Valles-Prieto is a citizen of the United States and served in the United States Air Force from February 16, 2005, until January 31, 2015, when he was honorably discharged.

18. The Defendant is the United States of America, acting by and through the Department of the Air Force, an agency of the United States Government. This Complaint may interchangeably refer to the Defendant as the "United States," "Defendant," or the "Air Force."

## FACTUAL ALLEGATIONS

### Background on the Military Disability Evaluation System

19. Chapter 61 of Title 10 of the United States Code establishes the IDES process through which the Air Force discharges airmen.

20. These statutes governing the IDES process authorize the Secretaries within the Department of Defense, including the Secretary of the Air Force, to separate a member of the armed forces when it is determined that the member is "unfit" to perform the duties of his office, grade, rank, or rating due to physical or mental disability.

21. For enlisted members of the Air Force, a "rating" reflects an individual's operational field, such as Electrical/Environmental Systems Journeyman.

22. The "grade" of enlisted personnel, such as Mr. Valles-Prieto's grade of E-4, determines the duties that are required of an individual within a particular rating.

23. Chapter 61 of Title 10 of the U.S. Code provides the Secretary with broad discretion to design the regulations for determining fitness. *See* 10 U.S.C. § 1216(a)–(b).

24. Air Force Instruction (AFI) 36-3208 establishes the Air Force IDES under the provisions of Title 10, United States Code, Chapter 61, and DoDI 1332.18.

25. The IDES consists of several phases of evaluation and review that result in a final disability determination for an Airman.

26. The IDES process begins when an Airman's primary care physician determines that the Airman suffers from a permanent medical condition that prevents him from performing his duties or creates a health or safety risk to his fellow service members.

27. An IDES referral must be made within one year from the date of diagnosis of a medical condition that renders a service member unable to return to full military duty. DoDI 1332.18, Vol. I, Appx. 1 to Encl. 3(2). An IDES referral is also required when a condition causes "or is expected to cause significant duty impairment or limitations for greater than one year." AFI 48-123, 5.3.12; *see id.* 5.3.12.2.1 (providing that IDES referral is required for a mental condition "expected to have persistent duty impairment (more than 1 year despite treatment)"). Airmen cannot self-refer into the IDES. *See* DoDI 1332.18, Vol. I, Appx. 1 to Encl. 3(2).

28. After a service member's referral to the IDES, a Medical Evaluation Board (MEB) convenes to document the service member's full clinical medical history. *See id.* Vol. I, Encl. 3(2).

29. The MEB is charged with determining whether any of the service member's mental or physical conditions fail the retention standards set forth by the service member's particular military branch. *See id.* If the MEB decides that none of the service member's medical conditions fails medical retention standards, the member is returned to full duty. If the MEB decides that at least one of the service member's medical conditions fails medical retention standards, the member is referred to a Physical Evaluation Board (PEB). *See id.* Air Force service members have the right to appeal an MEB's decision. *See id.* Vol. I, Encl. 3(4)(b)(2)(g); Vol. 2, Enc. 3(2)(i).

30. The PEB is the sole forum responsible for determining a service member's fitness for duty. A service member is to be considered unfit as a result of a physical or mental condition when the preponderance of the evidence demonstrates that the condition leaves the service member "unable to reasonably perform [the] duties of his or her office, grade, rank or rating," "represents a decided medical risk to the health of the member or to the welfare or safety of other members," or "imposes unreasonable requirements on the military to maintain or protect the Service member." *Id.* Vol. I, Appx. 2 to Encl. 3(2).

31. The PEB process has four possible outcomes. *See id.* Vol. I, App. 6 to Encl. 3(5). A service member can be found:

   a. <u>Fit for duty</u>;

   b. <u>Unfit for duty but ineligible for disability benefits</u> because, among other reasons, the disabling condition was not incurred in the line of duty, existed prior to service, was the result of intentional misconduct or willful neglect, or was incurred during an unauthorized absence;

7

      c. <u>Unfit for duty and eligible for medical retirement</u> with monthly disability retirement pay and other benefits; or

      d. <u>Unfit for duty and eligible for medical separation</u> with disability severance pay.

32. If a service member is found fit for duty, "[t]he Secretary of the Military Department concerned may not: (1) Authorize the involuntary administrative separation of a member based on a determination that the member is unsuitable for deployment or worldwide assignment after a PEB has found the member fit for the same medical condition; or (2) Deny the member's request to reenlist based on a determination that the member is unsuitable for deployment or worldwide assignment after a PEB has found the member fit for the same medical condition." *See id.* Vol. I, Encl. 3(7)(b).

33. If a service member is found unfit and eligible for disability benefits under outcomes "c" or "d," then the PEB must assign a percentage disability rating for each unfitting condition.

34. A PEB's disability rating controls the amount of military benefits and services to which the service member is entitled upon discharge.

35. The rating, when at least 30 percent, dictates that a service member is "medically retired" with monthly disability retirement pay and other benefits, such as lifetime healthcare coverage and military commissary and exchange privileges (outcome "c"); when below 30 percent, the service member is "medically separated" with a one-time lump sum severance payment and no additional benefits (outcome "d"). *See* 10 U.S.C. § 1201.

36. Title 10 of the U.S. Code and the rules of each of the service branches have long mandated that the armed forces follow the Veterans Affairs Schedule for Rating Disabilities (VASRD) when rating the disability of service members found unfit for duty due to physical or

mental disability. *See* 10 U.S.C. §§ 1201, 1203; National Defense Authorization Act for Fiscal Year 2008, Pub. L. No. 110-118, § 1642(a), 122 Stat 465, codified at 10 U.S.C. § 1216a.

37. A service member found unfit may appeal the PEB's decision in writing and in person at a formal hearing. *See* DoDI 1332.18(3), Vol. I, Encl. 3(3).

### Air Force Physical Profile System

38. The Air Force uses a Physical Profile System to assess an individual's medical status and functional abilities. AFI 48-123, 1.3. An Airman's profile, with its formal documentation of duty limitations, can directly lead to an Airman's referral into IDES. The profile system divides psychiatric diagnoses into four classifications, *id.* Table 1.1:

   a. S-1: "Diagnosis or treatment results in no impairment or potential impairment of duty function, risk to the mission or ability to maintain security clearance."

   b. S-2: "World Wide Qualified and diagnosis or treatment result in low risk of impairment or potential impairment that necessitates command consideration of changing or limiting duties."

   c. S-3: "World Wide Qualified and diagnosis or treatment result in medium risk due to potential impairment of duty function, risk to the mission or ability to maintain security clearance."

   d. S-4: "Diagnosis or treatment result in high to extremely high risk to the AF or patient due to potential impairment of duty function, risk to the mission or ability to maintain security clearance and which has already undergone an MEB or [Assignment Limitation Code] fast track as determined by the [Deployment Availability Working Group]."

39. When the Physical Profile identifies "a potential risk to an Airman's health, safety and well-being, the safety of the mission, or the ability of the Airman to effectively accomplish the mission," as indicated by an S-3 or S-4 designation, the Air Force must generate Form 469 to identify those duty limitations. *See id.* 1.7.1.

40. An MEB referral is also required when a mental health condition causes "or is expected to cause significant duty impairment or limitations for greater than one year." *Id.*

5.3.12; *see id.* 5.3.12.2 (requiring MEB for a mental condition "expected to have persistent duty impairment (more than 1 year despite treatment)").

## Plaintiff's Military History

41. Mr. Valles-Prieto enlisted in the Air Force on February 15, 2005, at the age of 19. At the time of his enlistment, he was in good health and did not exhibit any symptoms of mental health disorders.

42. Mr. Valles-Prieto served as an Electrical/Environmental Systems Journeyman for nearly ten years, including for two years in Kuwait. In this capacity, he was responsible for troubleshooting and correcting electrical and environmental discrepancies on C-17 and F-15E aircraft. He also removed, inspected, installed, and repaired system and subsystem components.

43. Mr. Valles-Prieto was considered a valuable member of the Air Force. He consistently received positive performance reviews, was often asked to train other aircrew members, and received a number of commendations for his service to our country, including the Air Force Achievement Medal and several awards for his role in combatting the global war on terrorism. In addition, Mr. Valles-Prieto dedicated time to serving his community, including by cleaning up the Puget Sound and as a volunteer with Adopt-A-Highway and Habitat for Humanity.

44. Mr. Valles-Prieto was rated "above average" and "truly among the best" from October 2007 through October 2012. For the period from October 2012 to October 2013, however, his rating declined to "average."

45. On February 1, 2013, in the middle of that review period, Mr. Valles-Prieto walked into the mental health clinic at Seymour Johnson Air Force Base to schedule an

10

appointment after speaking with his primary care manager about depression. At that time, he was a few months shy of his eighth year of service.

46.     During this initial consult, Mr. Valles-Prieto reported that he no longer had the motivation to do things he used to enjoy, like playing with his children, socializing, and volunteering. He also stated that his depression was affecting his job. He described himself as a "go getter" in the past, but more recently, he was less interested in his work and was having difficulty concentrating. Mr. Valles-Prieto explained that he had been feeling this way for about one-to-three years, and was seeking help because he had been unable to solve the issue on his own.

47.     The physician who saw Mr. Valles-Prieto on February 1, 2013, noted that he scored positive for depression based on his self-reporting on his Patient Health Questionnaire-9 (PHQ-9), and that he was in severe pain during the appointment. The pain stemmed from a 2009 ankle injury, which was affecting his physical training and performance. That, in turn, caused him to worry about his future in the Air Force, which contributed to his depression. Mr. Valles-Prieto was prescribed an antidepressant and given an appointment for a psychiatric evaluation with a licensed clinical social worker five days later.

48.     Mr. Valles-Prieto reported the same depressive symptoms during his psychiatric evaluation, and was diagnosed with Depressive Disorder (D/O) Not Otherwise Specified (NOS) on February 6, 2013.

49.     In addition to his Depressive Disorder, Mr. Valles-Prieto was treated for his ankle injury, a knee strain, an acute lumbar strain, and tinnitus during his service in the Air Force.

**Plaintiff's Separation from the Air Force**

50. As an Electrical/Environmental Systems Journeyman responsible for inspecting and repairing electrical systems on military aircraft, Mr. Valles-Prieto was required to maintain a Secret security clearance.

51. Security clearances are only valid for a set period of time and must be periodically renewed. When Mr. Valles-Prieto's Secret security clearance expired in January 2014, a clinical social worker reviewed his medical records and determined that, because of his mental health condition, a renewed "Clearance is NOT recommended." Mr. Valles-Prieto was accordingly denied a Secret security clearance.

52. Without a security clearance, Mr. Valles-Prieto was unable to perform his job responsibilities, leading to his separation from the Air Force and denial of re-enlistment.

53. After being denied re-enlistment as an active duty Airman, Mr. Valles-Prieto applied to enlist in the Air Force Reserve, but was barred from doing so because the Air Force concluded that he was "NOT Medically Qualified for reserves" due to his "mental health notes and history." The determination was based predominantly on Mr. Valles-Prieto's medical records, which noted that in 2013, a mental health clinic determined that he had an elevated risk for self-harm based on his self-reporting on his PHQ-9. He was accordingly denied Reserve enlistment prior to his discharge from the Air Force.

54. On January 31, 2015, more than a year after his initial diagnosis and exactly a year after his security clearance expired, which prevented his return to full duty, Mr. Valles-Prieto was discharged from the Air Force for non-retention on active duty with a re-entry code of "2X," signifying he was considered but not selected for reenlistment. *See* AFI 36-2606, tbl. 5.3 (Sept. 20, 2019).

55.     At no point before his discharge was Mr. Valles-Prieto referred for IDES processing. Without that referral, Mr. Valles-Prieto could not be medically retired and receive the benefits rightfully owed to him under 10 U.S.C. § 1201.

56.     On December 3, 2015, the U.S. Department of Veterans Affairs (VA) rated Mr. Valles-Prieto's medical conditions. The VA and the military's PEB process use the same criteria—the VASRD—to rate the degree of a veteran's disability. Using the VASRD, the VA assigned Mr. Valles-Prieto a 30 percent disability rating for his Depressive D/O NOS, effective February 1, 2015. The VA also granted him a 10 percent disability rating for each of his physical conditions: his ankle injury, knee strain, lumbar strain, and tinnitus. His overall disability rating was 50 percent. (As the VA explained, because of the calculation used to determine the combined rating, the percentages assigned for each condition do not necessarily add up to the combined rating evaluating.)

### The BCMR Decision

57.     In 2018, Mr. Valles-Prieto asked the BCMR to correct his military records to reflect medical retirement status based on his Depressive Disorder.

58.     In a letter accompanying his application to the BCMR, Mr. Valles-Prieto presented his case, highlighting, among other things, that before his discharge, he was never offered or provided any formal IDES processing, as required by law.

59.     The BCMR requested an advisory opinion from a BCMR Medical Advisor to address whether Mr. Valles-Prieto should have been referred to the IDES process. The Medical Advisor determined that, with respect to his diagnosis of Depressive Disorder, "there appears to have been a relationship between the declination/revocation of the applicant's security clearance [causing job loss] and some concerns with his mental wellness, due to the implicit risks his

condition imposes." The Medical Advisor therefore recommended "an opinion from the Mental Health Advisor regarding the applicant's fitness to serve, from a mental health perspective."

60. In a two paragraph discussion, the Mental Health Advisor determined that although Mr. Valles-Prieto's Depressive Disorder was the reason he was denied a security clearance, there was "insufficient evidence to warrant the desired change of the record." Although the Mental Health Advisor offered three reasons that purportedly justified this conclusion, the Mental Health Advisor did not cite any evidence, laws, or regulations in support of these determinations.

61. First, the Mental Health Advisor acknowledged that Mr. Valles-Prieto "was refused a security clearance because he requested treatment" for his depression, which rendered him unable to perform his job. But, paradoxically, the Mental Health Advisor concluded that he was still "fit for military service" and that his Depressive Disorder was not "severe enough to interfere with his performance [of] his duties."

62. Second, the Mental Health Advisor concluded that "the 8 year rule would apply" to Mr. Valles-Prieto, thereby rendering him ineligible for IDES processing. This rule ostensibly precludes consideration of a "preexisting condition" for IDES purposes "after the 8th year of service." The Mental Health Advisor determined, purportedly based on the Medical Advisor's report, that Mr. Valles-Prieto's Depressive Disorder was a "preexisting mental health" condition, which his service in the military "aggravated." Because Mr. Valles-Prieto was discharged after more than eight years of service based on an (allegedly) preexisting condition, the Mental Health Advisor concluded that this "8 year rule" rendered him ineligible for IDES processing.

63. Finally, the Mental Health Advisor concluded that Mr. Valles-Prieto had (allegedly) refused certain types of treatment for his Depressive Disorder, and so "he did not take

14

responsibility for his own mental health condition," and was therefore not eligible for a medical discharge.

64. Mr. Valles-Prieto filed a letter disputing the Mental Health Advisor's determination, and explaining why he was, in fact, entitled to be referred to the IDES process. First, he explained that, because his diagnosis prevented him from receiving a renewed security clearance, it should have been rated either an S-3 or S-4 on the Physical Profile, either of which would have triggered IDES referral, MEB review, and a medical discharge. Second, Mr. Valles-Prieto explained that the record is devoid of any evidence that he had a preexisting mental health disorder before he joined the Air Force. Mr. Valles-Prieto's medical records indicate that, at the time of his enlistment, he was in good health and did not exhibit any symptoms of mental health disorders. The evidence cited by both the Medical and Mental Health Advisors demonstrates that, at the earliest, Mr. Valles-Prieto began suffering from depression in his fifth year of service, and that he did not report those symptoms to a physician until a few months shy of his eighth year of service. Finally, Mr. Valles-Prieto explained that the Medical Advisor failed to cite any DoD or Air Force requirement that service members suffering from mental health conditions must take responsibility for those conditions if they wish to receive a medical discharge. Mr. Valles-Prieto further explained that because noncompliance with treatment can be a symptom of a mental health condition, even assuming he had refused certain treatment for his condition, this should not be held against him.

65. On September 10, 2019, the BCMR notified Mr. Valles-Prieto that it had denied his petition to correct his honorable discharge to a medical retirement. After summarizing Mr. Valles-Prieto's medical history and the Medical and Mental Health Advisors' recommendations, the Board issued a three sentence determination: "After reviewing all Exhibits, the Board

concludes the applicant is not the victim of an error or injustice. The Board concurs with the rationale and recommendation of the AFBCMR's Medical and Mental Health Advisors and finds a preponderance of the evidence does not substantiate the applicant's contentions. Therefore, the Board recommends against correcting the applicant's records." The Board did not address any of the arguments Mr. Valles-Prieto raised in his objection to the Medical and Mental Health Advisors' recommendations.

## **COUNT I**

66. Plaintiff re-alleges and incorporates by reference the foregoing paragraphs as if set forth in their entirety herein.

67. Plaintiff has exhausted his administrative remedies within the Air Force.

68. Title 10 U.S.C. § 1201 confers a substantive right to monetary benefits against the United States by specifying the disability retirement pay and benefits to which a qualified service member is entitled when he is medically retired.

69. The BCMR's decision that Mr. Valles-Prieto's Depressive Disorder interfered with his ability to renew his required security clearance and that his Depressive Disorder was a fitting condition not "severe enough to interfere with his performance [of] his duties" was unsupported by substantial evidence, arbitrary, capricious, and otherwise contrary to applicable law.

70. As a direct result of the BCMR's unlawful actions, Mr. Valles-Prieto continues to be deprived of the disability retirement pay and benefits to which he is entitled under 10 U.S.C. § 1201.

## COUNT II

71. Plaintiff re-alleges and incorporates by reference the foregoing paragraphs as if set forth in their entirety herein.

72. Plaintiff has exhausted his administrative remedies within the Air Force.

73. Title 10 U.S.C. § 1201 confers a substantive right to monetary benefits against the United States by specifying the disability retirement pay and benefits to which a qualified service member is entitled when he is medically retired.

74. By rejecting Mr. Valles-Prieto's argument about non-referral to the IDES process and overlooking or ignoring the requirement that service members shall be referred for evaluation within one year of the diagnosis of their medical condition if they are unable to return to full military duty, the Board's decision denying Mr. Valles-Prieto a medical retirement was arbitrary and capricious, unsupported by substantial evidence, and contrary to law.

75. As a direct result of the Board's illegal decision to deny Mr. Valles-Prieto's medical retirement, Mr. Valles-Prieto has been and continues to be deprived of the medical retirement pay and benefits to which he is entitled under 10 U.S.C. § 1201.

## COUNT III

76. Plaintiff re-alleges and incorporates by reference the foregoing paragraphs as if set forth in their entirety herein.

77. Plaintiff has exhausted his administrative remedies within the Air Force.

78. Title 10 U.S.C. § 1201 confers a substantive right to monetary benefits against the United States by specifying the disability retirement pay and benefits to which a qualified service member is entitled when he is medically retired.

79. The Board's decision to deny Mr. Valles-Prieto a medical retirement was arbitrary and capricious, unsupported by substantial evidence, and contrary to law because it determined that Mr. Valles-Prieto was "fit" for full duty at discharge despite the requirement that a service member found "fit" for duty cannot be administratively separated and/or denied re-enlistment due to the fitting condition.

80. As a direct result of the BCMR's unlawful actions, Mr. Valles-Prieto continues to be deprived of the disability retirement pay and benefits to which he is entitled under 10 U.S.C. § 1201.

## COUNT IV

81. Plaintiff re-alleges and incorporates by reference the foregoing paragraphs as if set forth in their entirety herein.

82. Plaintiff has exhausted his administrative remedies within the Air Force.

83. Title 10 U.S.C. § 1201 confers a substantive right to monetary benefits against the United States by specifying the disability retirement pay and benefits to which a qualified service member is entitled when he is medically retired.

84. The BCMR's reliance on the Mental Health Advisor's erroneous determination that Mr. Valles-Prieto was ineligible for a medical retirement because (1) although his medical condition prevented him from obtaining a security clearance, it was not severe enough to warrant IDES processing; (2) Mr. Valles-Prieto's Depressive Disorder was a "preexisting mental health condition"; and (3) Mr. Valles-Prieto failed to procure the requisite behavioral health treatment was unsupported by substantial evidence, arbitrary, capricious, and otherwise contrary to applicable law.

85. As a direct result of the BCMR's unlawful actions, Mr. Valles-Prieto continues to be deprived of the disability retirement pay and benefits to which he is entitled under 10 U.S.C. § 1201.

## COUNT V

86. Plaintiff re-alleges and incorporates by reference the foregoing paragraphs as if set forth in their entirety herein.

87. Plaintiff has exhausted his administrative remedies within the Air Force.

88. Title 10 U.S.C. § 1201 confers a substantive right to monetary benefits against the United States by specifying the disability retirement pay and benefits to which a qualified service member is entitled when he is medically retired.

89. The BCMR's one-paragraph analysis fails to explain how its conclusion is supported by the facts. The Board did not explain why the Medical Advisor's recommendation warranted denying Mr. Valles-Prieto's request to adjust his military records, and it failed to take account of contradictory evidence. Because the Board did not provide a reasoned decision, its determination is unsupported by substantial evidence, arbitrary and capricious. *See White v. Mattis*, No. 18-02867, 2019 WL 6728448 (D.D.C. Dec. 11, 2019).

90. As a direct result of the BCMR's unlawful actions, Mr. Valles-Prieto continues to be deprived of the disability retirement pay and benefits to which he is entitled under 10 U.S.C. § 1201.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that this Court enter judgment against Defendant and award the following relief:

a. Award Plaintiff disability retirement pay and benefits;

    b.    Order that Plaintiff's military records be corrected to reflect that he was medically retired at the date of his discharge;

    c.    Award Plaintiff interest, cost, and attorneys' fees; and

    d.    Grant such other relief as the Court deems just and proper.

May 12, 2020

Bart Stichman
Esther Leibfarth[*]
Rochelle Bobroff
NATIONAL VETERANS LEGAL
  SERVICES PROGRAM
1600 K Street, NW, Suite 500
Washington, DC 20006
Telephone: (202) 265-8305, ext. 152
Facsimile: (202) 328-0063
esther@nvlsp.org

[*]*Licensed in New York; representation in the District of Columbia limited to matters and proceedings before federal courts and agencies.*

Respectfully submitted,

/s/ Danielle Desaulniers Stempel
Catherine E. Stetson
Danielle Desaulniers Stempel[†]
HOGAN LOVELLS US LLP
555 Thirteenth Street, NW
Washington, D.C. 20004
Telephone: (202) 804-7798
Facsimile: (202) 637-5910
cate.stetson@hoganlovells.com
danielle.stempel@hoganlovells.com

[†] *Admitted only in Maryland; practice supervised by principals of the firm admitted in D.C.*

*Counsel for Alver Valles-Prieto*